IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **TASHA L. PEETE-JEFFRIES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 22-2003-TLP-tmp |
| | ) |
| **SHELBY COUNTY BOARD OF** | ) |
| **EDUCATION,** | ) |
| | ) |
| Defendant. | ) |

_____

REPORT AND RECOMMENDATION
_____

Before the court is a Motion to Dismiss for Failure to State a Claim by defendant Shelby County Board of Education ("the Board"), filed on March 2, 2022. (ECF No. 14.) Plaintiff Tasha Peete-Jeffries responded to the motion on March 9, 2022. (ECF No. 17.) The Board filed a reply on March 21, 2022. (ECF No. 18.) For the reasons set forth below, the undersigned recommends that the Board's motion be granted.

I.   PROPOSED FINDINGS OF FACT

The facts in Peete-Jeffries's complaint date back over a decade. By at least 2010, Peete-Jeffries was working as a teacher for the Board at various Shelby County schools. (ECF No. 10 at 5.) Peete-Jeffries's issues with the Board began in 2010, when she received a non-renewal letter from her principal. (Id.) She contested this decision through the Board's internal appeals

process and was ultimately successful; she began working as a teacher again in 2013. (Id.) For five years, her employment continued without issue. In 2018, Peete-Jeffries took a job at a new school, where she was "mistreated by a fellow colleague and administrators" and began receiving allegedly unjustified lower evaluation scores. (Id.) She reported these issues to the Board multiple times and each time was told that "they would correct the problem." (Id.) In one of her reports, she provided video evidence of the harassment. (Id.) But instead of addressing these issues, the Board "began mistreating [Peete-Jeffries] in various ways." (Id.) Peete-Jeffries then filed an Equal Employment Opportunity Commission ("EEOC") charge against the Board in 2019, after which the Board began retaliating against her.[1] (Id. at 6.)

Peete-Jeffries alleges that the Board moved her in August 2020, to a school that did not have an elevator. Peete-Jeffries required an elevator to navigate multi-level buildings due to her fibromyalgia and arthritis.[2] (Id.) She was also demoted from "a

---

[1] It appears this charge resulted in a Right to Sue Notice, which Peete-Jeffries used to support a prior lawsuit against the Board. See Case No. 2:20-cv-02836-TLP-tmp. This prior suit was dismissed for failure to state a claim. (Id. ECF No. 23-24.) District Judge Parker had previously granted Peete-Jeffries the opportunity to amend her complaint after the undersigned recommended that it be dismissed, but an amended complaint was never filed.

[2] The organization of Peete-Jeffries's complaint makes the timeline of the events she describes, as well as how many instances of discrimination she suffered, somewhat unclear. Specifically, Peete-Jeffries notes that "after she was terminated in May of 2020

level 5 Teacher to a Novice Teacher in September 2020." (Id.) Around this time, the Board also began excessively monitoring her teaching with "approximately 15 virtual classroom observations" during which her principal would yell at her. (Id.) These issues continued at this school until Peete-Jeffries was transferred to another school on October 29, 2020. (Id. at 7.)

However, one of Peete-Jeffries's previous co-workers, who had been a source of her original harassment back in 2018, worked at this new school. (Id.) Her new supervisors were allegedly no better. Peete-Jeffries's new principal allegedly harassed her by accusing her of not maintaining grades and consistently criticizing her for not attending fully optional, off-hours faculty meetings. (Id.) Her requests to work remotely in March 2021 were denied without explanation. (Id. at 12.) This principal "scolded her when she came into her classroom on April 20, 2021 as she tried to exit the building in a wheelchair," and "constantly email[ed], call[ed], and text[ed] her" when she took FMLA leave. (Id. at 7.) She also encountered issues getting paid for all of

---

for failure to secure a job" she was hired back at Cummings Elementary, which did not have an elevator, preventing her from accessing her assigned classroom. (ECF No. 10 at 12.) However, it is unclear if this is the same incident as what she describes as occurring in August 2020. Both descriptions include working at a school without an elevator. However, the school involved in the August 2020 incident is unnamed, whereas this later description names Cummings Elementary as the school. Further, Peete-Jeffries describes being "moved" to the unnamed school, whereas she states she was hired on at Cummings Elementary.

the days she worked and was told by her supervisors to teach classes outside of her certification. (Id. at 7-8.) At some point, the Board transferred her to yet another school, and this new position required an excessive forty-five minute commute both ways. (Id. at 8.) Peete-Jeffries also makes other, undated allegations, including that the Board failed to give her a properly marked handicapped parking space, did not provide reasonable accommodations such as an ergonomic chair or motorized wheelchair, and laid her off excessively from multiple different schools. (Id. at 12-13.)

In May 2021, Peete-Jeffries filed another EEOC charge against the Board, detailing all of the above. (Id. at 8.) Peete-Jeffries alleges that further retaliatory conduct occurred after she filed this charge. This further conduct included the Board withholding a promised lump sum payment for Peete-Jeffries's work during the summer and using her FMLA leave as a reason to give her "the maximum amount of evaluations the following school year." (Id.) At some point, Peete-Jeffries asked to meet to arrange an administrative transfer due to the ongoing harassment and retaliation, but was denied and told her FMLA time off should help resolve those issues. (Id.) She was denied a "regular transfer" before she interviewed for an open position and was told it had already been filled and that no other positions were available. (Id. at 8-9.) Her principal contacted her while on FMLA leave

multiple times and she was required to be cleared by a doctor upon returning from quarantine due to COVID-19, despite no other teacher being required to do so. (Id. at 9.) During this quarantine, she was forced to ask for payment, despite taking sick days she had previously accrued. (Id.) She also encountered issues with being prematurely marked absent from work. (Id.) Eventually, Peete-Jeffries was laid off again, this time from Bolton High School, and despite being placed at Melrose High School soon thereafter, the Board would "not allow her to go [there]." (Id.) During the time period when she was prevented from going in, the district continuously marked her absent and removed a personal day she was owed. (Id.)

The EEOC issued Peete-Jeffries a Right to Sue letter on September 23, 2021. (ECF No. 1 at 5.) Peete-Jeffries attached her Right to Sue Letter to her complaint and indicated she had received it on September 27, 2021. (Id.) After receiving this Right to Sue Letter, Peete-Jeffries filed suit alleging disability discrimination and retaliation on January 3, 2022. (Id.) Her complaint was mailed to the court via certified mail with a postmarked date of December 21, 2021. (ECF No. 1-4.) She was granted leave to proceed *in forma pauperis* ("IFP") on January 21, 2022. (ECF No. 8.) Pursuant to Administrative Order 2013-05, the undersigned screened the complaint to determine whether or not summons should issue, and ultimately ordered summons issued on

- 5 -

January 21, 2022. (Id.) The Board filed the present motion on March 2, 2022, arguing that Peete-Jeffries's claim is time-barred and that service of process was insufficient. (ECF No. 14.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

To avoid dismissal for failure to state a claim under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); see also Fed. R. Civ. P. 12(b)(6). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679. Where "the allegations in the complaint affirmatively show that the claim is time-barred," then dismissing a case under Rule 12(b)(6) due to the statute of limitations may be appropriate. Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012).

### B. Service Issues

As a preliminary matter, the undersigned will address issues the Board and Peete-Jeffries have encountered with service. The Board correctly notes that Federal Rule of Civil Procedure 4(c)(1) requires that "a summons must be served with a copy of the complaint" and that "the plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." The Board states that they were never served with a copy of the complaint. (ECF No. 14-1.)

However, as Peete-Jeffries correctly argues, because she is proceeding IFP, service was the responsibility of the United States Marshals and all costs of service were to be paid by the United States. 28 U.S.C. § 1915; Fed. R. Civ. P. 4(c)(3). Any errors in service were not the fault or responsibility of the plaintiff and instead rest with the United States. Because of this, dismissing Peete-Jeffries's case would be unwarranted. Thus, the undersigned must consider the main argument of the Board's motion: whether Peete-Jeffries's case is time barred.

**C.   Timeliness of the Complaint**

Peete-Jeffries's complaint alleges employment discrimination claims under Title VII and the Americans with Disabilities Act ("ADA"). Both statutes require plaintiffs with employment discrimination claims to exhaust administrative remedies with the EEOC before bringing a suit in federal court. 42 U.S.C. § 2000e-5(f)(1). After filing a charge of discrimination with the EEOC,

- 7 -

plaintiffs may be issued a right to sue letter, giving them the right to file a federal lawsuit within ninety days of receiving the letter. Id. This time limit applies to both Title VII and ADA employment discrimination claims. McGhee v. Disney Store, 53 F. App'x 751, 752 (6th Cir. 2002) (ADA); Robinette v. Promedica Pathology Labs, No. 5:19-cv-2476, 2021 WL 3860520, at *2 (N.D. Ohio Aug. 30, 2021) (Title VII) (citing Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 557 (6th Cir. 2000)). Federal courts strictly apply this ninety-day time limit. Peete v. Am. Standard Graphic, 885 F.2d 331, 332 (6th Cir. 1989) (dismissing case for being filed ninety-one days after receipt of the right to sue letter).

The Board argues that Peete-Jeffries's complaint was untimely filed. They point out that Peete-Jeffries received her Notice of Right to Sue on September 27, 2021, and that her complaint was not filed until "*at least* January 3, 2022, seven days after expiration of the filing deadline." (ECF No. 14 at 5) (citing (ECF No. 1 at 15.)) While the Board also argues that "Plaintiff's Complaint is not deemed filed until January 21, 2022, when the Court granted Plaintiff's Motion to Proceed in forma pauperis," this is incorrect, at least in terms of any effect on the timeliness of Peete-Jeffries's complaint. (Id.) The Sixth Circuit has previously held that statute of limitations and other time requirements are tolled while an IFP petition is pending. Powell v. Jacor Commc'n

Corp., 320 F.3d 599, 603 (6th Cir. 2003). The case the Board cites for their argument, Truitt v. County of Wayne, dealt with a situation in which an IFP petition was *denied* and the plaintiff then failed to promptly pay the filing fee. 148 F.3d 644, 647-48 (6th Cir. 1998) (recognizing that the statute of limitations is tolled while an IFP application is pending and that "constructive filing" is applicable) (citing Williams-Guice v. Board of Educ., 45 F.3d 161, 165 (7th Cir. 1995) (noting that "the plaintiff must pay the docket fee within the *remainder* of the period of limitations" if an IFP application is denied) (emphasis added)). Since Peete-Jeffries's IFP application was granted, constructive filing applies, and her complaint is deemed filed on January 3, 2022. Nevertheless, because Peete-Jeffries's Notice of Right to Sue was received on September 27, 2021, her ninety-day deadline to file suit in federal court expired on December 27, 2021.

Peete-Jeffries does not dispute the deadline date. (ECF No. 17 at 4.) She instead makes two arguments that her complaint should be considered timely filed, or at least that the delay should be excused. First, she argues that Federal Rule of Civil Procedure 6(b) "allows courts to grant relief by finding that an inadvertent late filing, while negligent, constitutes 'excusable neglect'" (ECF No. 17 at 1) (quoting Pincay v. Andrews, 389 F.3d 853, 860 (9th Cir. 2004)). Second, she contends that she mailed her complaint on December 21, 2022, using certified mail, and that the

certified mail "was delivered after the date that [she] was told that it would be delivered[.]" (Id. at 5.)

Federal Rule of Civil Procedure 6(b) deals with extending time for deadlines set by the Federal Rules. The Rule provides that "when an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). However, the Rule does not apply to every time limit a litigant may encounter. "It is well established that Rule 6(b) governs the enlargement of time periods prescribed by the federal rules or by an order of the district court." O'Malley v. Town of Egremont, 453 F. Supp. 2d 240, 247 (D. Mass. 2006) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d §1165 (2005) (internal quotation marks omitted)). The rule does not apply to time limits set in statutes and cannot be used to extend statutes of limitations or similar time limits. Id. at 248 (collecting cases).

Here, Peete-Jeffries seeks to extend a statutory time limit. See 42 U.S.C. § 2000e-5; Truitt, 148 F.3d at 646-47 ("The ninety-day filing requirement of 42 U.S.C. § 2000e-5(f)(1) is not a jurisdictional requirement but, instead, is a timing requirement similar to a statute of limitations[.]") Rule 6(b) cannot be used to extend this statutory deadline. "[I]n the absence of waiver, estoppel or equitable tolling," the ninety-day time limit governs.

- 10 -

Williams v. Sears, Roebuck and Co., 143 F. Supp. 2d 941, 945 (W.D. Tenn. 2001) (quoting Peete, 885 F.2d at 332). This time limit applies equally to *pro se* plaintiffs and represented parties, "and even one day's delay is fatal to a claim." Id. (citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 150 (1984); Anooya v. Hilton Hotels Corp., 733 F.2d 48, 49 (7th Cir. 1987); Peete, 885 F.2d at 332; Wilson v. Doctors Hosp. of Hyde Park, 909 F. Supp. 580, 581 (N.D. Ill. 1996)); see also Johnson v. United States Postal Serv., 863 F.2d 48 (table), 1988 WL 122962, at *3 (6th Cir. 1988) ("If courts were to toll the limitation period whenever a plaintiff was one day late, the effect would be to create a [ninety-one] day limitation period"). Without a basis for waiver, estoppel or equitable tolling, the undersigned cannot set aside Peete-Jeffries's failure to file her suit within the ninety-day time limit.

Peete-Jeffries further asserts that she mailed the complaint on December 21, 2021, via certified mail, with the expectation that it would arrive in time. (ECF No. 17 at 5.) This is supported by a scanned copy of the envelope that the complaint was mailed in. (ECF No. 1-4.) Although not entirely clear from her response, to the extent she argues that the mailing date should be construed as the filing date, she "cites no legal authority in support of her argument that the mailing date, not the date the complaint was received and filed by the Clerk, constitutes the filing date for

purposes of compliance with the ninety-day limitations period." Robinette, 2021 WL 3860520, at *2. District and circuit courts have heard such arguments before and routinely rejected them. Id. at *3 (collecting cases). To the extent she asks the court to apply equitable tolling due to the apparent delay in delivery by the Postal Service, the twelve-day period between mailing and delivery, by itself, is not a "'compelling equitable consideratio[n]' on this record to warrant equitable tolling." Elliott v. Comm'r of Soc. Sec., No. 1:08-CV-702, 2009 WL 2424185, at *1 (W.D. Mich. Aug. 6, 2009) (denying equitable tolling where a sixteen-day delivery period caused a complaint to be filed six days late) (quoting Graham-Humphreys, 209 F.3d at 561). Given the fact that the filing deadline was a mere six days away and overlapped with the week of Christmas, Peete-Jeffries (a resident of Memphis) could have opted to hand-deliver the complaint instead of mailing, could have checked with the Postal Service regarding the status of the certified mail delivery, and should have reasonably expected that mail service during the holiday period could have taken longer than six days. Finally, Peete-Jeffries also refers to arguable delays caused by her former attorney she had retained during the administrative proceedings regarding her claims. (ECF No. 17 at 4-5.) To the extent these attorney-caused delays also function as an argument for equitable tolling, the Sixth Circuit has stated equitable tolling should not be applied

to "a garden variety claim of excusable neglect," even in cases of undisputed "poor attorney performance[.]" Gordon v. England, 354 F. App'x 975, 980 (6th Cir. 2009).

### III.   RECOMMENDATION

Based on the above, it is recommended that the defendant's Motion to Dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 22, 2022
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.  ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**